IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01757-DME-KLM

TIMOTHY F. KAISER and PATRICIA KAISER,

    Plaintiffs,

v.

MOUNTAIN STATES MUTUAL CASUALTY COMPANY, a New Mexico corporation,

    Defendant.

---

ORDER GRANTING MOTION TO DISMISS

---

This matter comes before the Court upon a Motion to Dismiss (Doc. 10) filed by Defendant Mountain States Mutual Casualty Company ("Mountain States"). Plaintiffs Timothy and Patricia Kaiser filed a lawsuit against Mountain States based on the failure of Mountain States to tender payments to the Kaisers pursuant to an uninsured motorist coverage provision contained in a commercial automobile insurance policy ("Business Auto Policy") issued to Mr. Kaiser's employer, High Performance Wash Systems, Inc. ("High Performance"). The Kaisers assert two claims against Mountain States: (1) Mountain States committed a breach of contract by failing to make payments to the Kaisers pursuant to the Business Auto Policy and (2) Mountain States breached the implied covenant of good faith and fair dealing in their handling of the Kaisers' insurance claim.[1] Mountain States filed a motion to dismiss, requesting that all the Kaisers' claims

---

[1] The Kaisers initially asserted an additional claim for breach of contract based on Mountain States's failure to make payments pursuant to an umbrella liability policy, but

1

be dismissed with prejudice. The Court GRANTS in part this motion.

I.      **Background**

Mountain States issued the Business Auto Policy, which included uninsured motorist coverage, to Mr. Kaiser's employer, High Performance. As to the uninsured motorist coverage, the relevant provision states:

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."

The Business Auto Policy further states that the following are considered "insured" under a commercial automobile policy: "(a) Anyone 'occupying' or using a covered 'auto' or a temporary substitute for a covered 'auto,'" and "(b) Anyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another 'insured.'" (Motion to Dismiss Ex. A at 4.)

While completing work for his employer, Mr. Kaiser drove a company vehicle covered by the Business Auto Policy, which he parked at Wash Time Car Wash, close to the building housing the equipment control room. Mr. Kaiser then advised the car wash manager that he was going to start the water reclamation system, entered the equipment control room to activate the water reclamation system, and walked from the control room to a manhole that he needed to inspect. While Mr. Kaiser was bent over to look into the manhole, he was struck by an automobile driven by Bobbie Jo Pastecki.

---

in their Response to the Motion to Dismiss, the Kaisers withdrew that claim. Accordingly, that claim is dismissed without prejudice.

The Complaint alleges that Mr. Kaiser was "'occupying' or 'using' the covered vehicle at the time he was injured by Ms. Pastecki, who was an underinsured driver."[2]

The Kaisers made a demand for payment to Mountain States, but Mountain States did not make any payments to the Kaisers. At some point, the Kaisers allege that Ms. Pastecki "offered up her policy limits of $100,000.00" to the Kaisers, but they do not allege that they accepted the offer or that they ever received any payments from Ms. Pastecki or her insurance provider. The Kaisers filed a lawsuit against Ms. Pastecki in state district court ("Pastecki lawsuit"), which they lost ("Pastecki verdict"). The Kaisers have filed a notice of appeal regarding their lawsuit against Ms. Pastecki.

Subsequently, the Kaisers filed this lawsuit against Mountain States, which was commenced in state court and removed to federal court, and which Mountain States now moves to dismiss.

## II.     Standard of Review

"[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." Khalik v. United Air Lines, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotation marks omitted). "A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." Id. (internal quotation

---

[2] The relevant provision of the Business Auto Policy states that "[u]ninsured motor vehicle" includes "an underinsured motor vehicle," which is a vehicle "for which the sum of all liability bonds or policies at the time of an 'accident' provides at least the amounts required by the applicable law . . . but their limits are: (1) Less than the limit of this coverage, or (2) Reduced by payments to persons other than an 'insured' in the 'accident' to less than the Limit of Insurance of this coverage." (Motion Ex. A. at 4.) The parties do not dispute that the vehicle that struck Mr. Kaiser fell under the definition of "underinsured," and thus, also under the definition of "uninsured."

marks omitted).  In this context, "plausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible."  Id. at 1191 (internal quotation marks omitted).  But "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context."  Id. (internal quotation marks omitted).

To state a plausible claim for relief, "mere labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice."  Id. (internal quotation marks omitted).  "Accordingly, in examining a complaint under Rule 12(b)(6), [a court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."  Id.  Moreover, although "the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim."  Id. at 1192.

In deciding a Rule 12(b)(6) motion to dismiss, a "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002).  In this case, although not attached to the Complaint, the parties have attached to the Motion to Dismiss and the Reply copies of the Business Auto Policy and relevant documents from the Pastecki lawsuit.  The authenticity of these documents is not disputed, and they are central to the Kaisers' claim; accordingly, the Court will consider these documents.

**III.     Discussion**

    **A.     The Kaisers' Complaint Fails to State Sufficiently a Claim for Relief for Breach of Contract Because the Facts Alleged Indicate that the Kaisers Are Not Legally Entitled to Recover from the Underinsured Driver**

Because this is a diversity action, we "apply the substantive law of the forum state, including its choice of law rules." Berry & Murphy, P.C. v. Carolina Cas. Ins. Co., 586 F.3d 803, 808 (10th Cir. 2009) (internal quotation marks omitted). "Under Colorado choice-of-law rules, an insurance contract is governed by the law of the state with the most significant relationship to the insurance contract." Id. In this case, the parties do not dispute that Colorado law applies.

"Colorado courts construe an insurance policy's terms according to principles of contract interpretation." Id. (internal quotation marks omitted). Under Colorado law, the courts "'seek to give effect to the intent and reasonable expectations of the parties. Accordingly, unless the parties intend otherwise, terms in an insurance policy should be assigned their plain and ordinary meaning.'" Id. (quoting Thompson v. Md. Cas. Co., 84 P.3d 496, 501 (Colo. 2004)). Courts "'assume a heightened responsibility in reviewing insurance policy terms to ensure that they comply with public policy and principles of fairness. Accordingly, ambiguous terms in an insurance policy are construed against the insurer.'" Id. (internal quotation marks omitted) (quoting Thompson, 84 P.3d at 501). Moreover, "[a] contract provision that violates public policy by diluting, conditioning or unduly limiting statutory coverage may be declared void and unenforceable." Peterman v. State Farm Mut. Auto. Ins. Co., 961 P.2d 487, 492 (Colo. 1998).

As discussed, the relevant provision of the Business Auto Policy states that Mountain States will "pay all sums the 'insured' is legally entitled to recover as compensatory damages" from an uninsured motorist that "result from 'bodily injury' sustained by the 'insured' caused by an 'accident.'" This provision is consistent with the Colorado statute governing uninsured/underinsured motorist coverage ("UM Statute"), which states that, unless an insured rejects such coverage, insurance policies must include coverage "for the protection of persons insured thereunder who are <u>legally entitled</u> to recover damages from owners or operators of uninsured motor vehicles," Colo. Rev. Stat. Ann. § 10-4-609(1)(a) (emphasis added).[3] Accordingly, this Court will consider the Colorado Supreme Court's interpretation of the UM Statute.

The Colorado Supreme Court has "consistently held that the legislative intent behind" the UM Statute "is to give Coloradans the opportunity to recover compensation for losses from their [underinsured motorist coverage] insurer in the same manner and to the same extent as they would recover for such losses from a tortfeasor who was insured in amounts equal to the insured's [underinsured motorist] coverage." <u>USAA v. Parker</u>, 200 P.3d 350, 353 (Colo. 2009). Accordingly, the Colorado UM Statute "requires that an insured be 'legally entitled to recover damages from owners or operators of uninsured motor vehicles' in order to invoke [uninsured motorist] coverage." <u>State Farm Mut. Auto. Ins. Co. v. Brekke</u>, 105 P.3d 177, 188 (Colo. 2004) (quoting Colo. Rev. Stat. Ann. § 10-4-609(1)(a)). In interpreting the "legally entitled" language of the

---

[3] Similarly, the UM Statute provides that "[u]ninsured motorist coverage shall include coverage for damage for bodily injury or death that an insured is <u>legally entitled</u> to collect from the owner or driver of an underinsured motor vehicle," Colo. Rev. Stat. Ann. § 10-4-609(4) (emphasis added).

Colorado UM Statute, the Colorado Supreme Court has stated that, because the statute's "coverage applies only if the insured is 'legally entitled' to damages[,] . . . . a finding of no liability or of limited damages on the part of the uninsured motorist will eliminate or limit a claim under the insurance provider's [uninsured motorist] coverage." Id.

Accordingly, the jury verdict against the Kaisers in the Pastecki lawsuit would prevent the Kaisers from bringing a claim against Mountain States because they are not legally entitled to recover from Ms. Pastecki. Moreover, the other allegations in the Complaint do not support that the Kaisers are legally entitled to recover anything from Ms. Pastecki. The Complaint does not put forth any theory or allegation under which the Kaisers might be entitled to receive damages from Ms. Pastecki—indeed, the Complaint does not assert that Ms. Pastecki is liable for damages, that she was at fault for the accident, or that she was negligent. Although the Pastecki verdict is being appealed, the Complaint does not support that the Kaisers are legally entitled to receive any damages from Ms. Pastecki at this time. Thus, the Kaisers have failed to state sufficiently a claim for relief for breach of contract.

  **B.** **The Kaisers' Complaint Fails to State Sufficiently a Claim for Relief for Breach of the Implied Covenant of Good Faith and Fair Dealing Because It Does Not Sufficiently Allege that Mountain States Acted Unreasonably, or that It Knowingly or Recklessly Disregarded the Validity of the Claim**

"Due to the special nature of the insurance contract and the relationship which exists between the insurer and the insured, an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort." Goodson v. Am. Standard Ins. Co. of Wisconsin, 89 P.3d 409, 414 (Colo. 2004) (internal quotation

marks omitted). "The basis for tort liability is the insurer's conduct in unreasonably refusing to pay a claim and failing to act in good faith, not the insured's ultimate financial liability." Id. "First-party bad faith cases involve an insurance company refusing to make or delaying payments owed directly to its insured under a first-party policy such as life, health, disability, property, fire, or no-fault auto insurance." This action involves a first-party claim.

"In a first-party claim . . . the insured must prove both that the insurer acted unreasonably under the circumstances and that the insurer either knowingly or recklessly disregarded the validity of the insured's claim." Am. Family Mut. Ins. Co. v. Allen, 102 P.3d 333, 342 (Colo. 2004) (internal quotation marks omitted). "The reasonableness of an insurer's conduct is measured objectively based on industry standards." Id. "If the reasonable investigation and denial of an insured's claim is within the common knowledge and experience of ordinary people, then expert testimony is not required." Id. at 344. "[W]hether the standard of care is a matter of common knowledge is committed to the sound discretion of the trial court." Id. However, the Colorado Supreme Court has stated that "[t]he reasonableness of an insurer's investigation into the underlying events of an automobile insurance claim is not a technical question and does not require additional professional training beyond the knowledge of the average juror." Id. at 345.

In this case, even setting aside the verdict against the Kaisers in the Pastecki lawsuit, the allegations in the Complaint do not support a claim that Mountain States acted unreasonably in its handling of the insurance claim, or that it knowingly or recklessly disregarded the validity of the claim. The Kaisers allege that Mountain States

8

"pursued a course of action to deny the Plaintiffs coverage under the policy that was unreasonable and vexatious and contrary to Colorado Law"; that "[t]he actions of Mountain States were reckless"; and that if "Mountain States had acted in a reasonable and prudent manner in handling the claim which Mr. and Mrs. Kaiser had, Mr. and Mrs. Kaiser would have been fairly compensated for their injuries without going to trial" against Ms. Pastecki "and would not have suffered the damages and emotional distress they have sustained."

But setting aside these conclusory allegations, the Kaisers' factual allegations are that Mountain States "had actual or constructive knowledge" that Mr. Kaiser "had been severely injured by an underinsured driver while Mr. Kaiser was occupying or using a covered vehicle"; that Ms. Pastecki "had offered up her policy limits of $100,000"; and that the Kaisers "had damages in excess of [Ms. Pastecki's] insurance policy limits." The Kaisers also allege that "[d]espite demand by Plaintiff, Mountain States has failed to make payments under the policies." Thus, the Kaisers do not identify any act of Mountain States, other than its failure to pay the claim, to support their assertion that Mountain States was unreasonable, or that it knowingly or recklessly disregarded their claim. And the other facts alleged in the Complaint undercut the Kaisers' conclusory allegation that the failure to pay was unreasonable or a knowing or reckless disregard of a valid claim.

Specifically, the Complaint does not allege that Mountain States had knowledge that the Kaisers were legally entitled to receive anything from Ms. Pastecki, or that Mountain States knew that Ms. Pastecki was at fault or negligent. As discussed elsewhere, the Complaint never alleges that Ms. Pastecki was at fault or negligent, so

the Court cannot infer that Mountain States had such knowledge.  Further, although the Kaisers do allege that, at one point, Ms. Pastecki "had offered up her policy limits of $100,000.00," they do not allege that they accepted this offer or that Mountain States knew whether that offer was accepted.

Moreover, Mountain States disputes that Mr. Kaiser was insured under the policy, and the facts alleged in the complaint indicate that it was reasonable for Mountain States to question whether Mr. Kaiser was insured.  In relevant part, the Business Auto Policy states that "[a]nyone 'occupying' or using a covered 'auto'" will be considered "insured."  Although the Complaint alleges that Mountain States had knowledge or constructive knowledge that Mr. Kaiser "had been severely injured by an underinsured driver while Mr. Kaiser was occupying or using a covered vehicle," it is not clear from the Complaint that Mountain States knew anything other than that Mr. Kaiser <u>claimed</u> to be using or occupying the vehicle at the time of the incident.

The other facts alleged in the Complaint indicate that it would have been reasonable for Mountain States to question Mr. Kaiser's claim that he was using or occupying the vehicle.  At the time of the accident, the Complaint does not allege that Mr. Kaiser was in the vehicle, near the vehicle, in the process of entering or exiting the vehicle, actively utilizing the vehicle in his inspection of the manhole, or otherwise operating the vehicle.   Instead, the Complaint alleges that Mr. Kaiser had parked the vehicle and completed multiple tasks away from the vehicle before being struck by Ms. Pastecki.

In sum, the facts alleged in the Complaint do not support a conclusion that Mountain States acted unreasonably under the circumstances in failing to make

payments to the Kaisers, or that it knowingly or recklessly disregarded the validity of the Kaisers' claim. Accordingly, the Complaint does not sufficiently state a claim for relief for breach of the covenant of good faith and fair dealing.

### IV.    Conclusion

In sum, the Complaint does not sufficiently state a claim for relief. But the Kaisers are appealing the jury verdict in the Pastecki case, and the court does not at this point want to speculate whether the outcome of that appeal could change the legal claims that the Kaisers might be able to assert against Mountain States in the future. Thus, the Court GRANTS in part Mountain States's Motion to Dismiss and ORDERS the following:

1) the claim for breach of contract be DISMISSED without prejudice;

2) the claim for breach of the implied covenant of good faith and fair dealing be DISMISSED with prejudice;

3) the withdrawn claim for breach of contract based on provisions of an umbrella liability policy be DISMISSED without prejudice.

As this Order ends the litigation in this proceeding, the Court directs the Clerk to enter judgment accordingly.

Dated: January 17, 2013

BY THE COURT:

s/ David M. Ebel

UNITED STATES DISTRICT JUDGE